BROWN v. FRENCH, County Treasurer, et al.

(Circuit Court, D. Montana.    April 13, 1897.)

No. 458.

1. NATIONAL BANKS—TAXATION OF CAPITAL AND STOCK.
    The Montana statute (Pol. Code, § 3692) provides for assessing shares of
    bank stock to the owners thereof, and, to aid the assessors in determining
    their value, requires the bank to furnish a verified statement showing the
    amount and number of shares of its capital stock, surplus, etc.    An as-
    sessor, instead of demanding the statement here required, presented to a
    national bank a blank form for listing property subject to taxation.    The
    bank did not return a verified list, but its assistant cashier handed to the
    assessor a statement beginning, "Capital, $800,000," followed by items of
    surplus, undivided profits, United States bonds, and real estate.    The as-
    sessor deducted the amount of the bonds and real estate from the "capi-
    tal" and assessed the remainder to the bank, as stock.    *Held*, that the tax
    was illegal, as the capital of national banks is exempt from taxation under
    the federal laws, and as both the state and federal laws require the shares
    to be taxed to their owners;  and that the form of the return did not war-
    rant the assumption that the bank owned its own shares.

2. SAME—ESTOPPEL.
    A national bank which returns its capital for taxation is not thereby es-
    topped from setting up that the same was not subject to taxation, and
    refusing to pay the tax.

3. SAME—INJUNCTION.
    A federal court will enjoin a sale of the real estate of a national bank to
    enforce payment of taxes illegally assessed against its capital stock, under
    a law which would make the sale a cloud on its title, though the state
    law gives an action at law to recover back taxes illegally exacted.

4. SAME—NATIONAL BANK RECEIVERS.
    A receiver of an insolvent national bank occupies a fiduciary relation to
    its creditors, and may sue in equity to enjoin the collection of taxes ille-
    gally assessed against the stock of the bank.

Toole & Wallace, for complainant.
R. R. Purcell and Carpenter & Carpenter, for defendants.

KNOWLES, District Judge.    This is an action on the part of
complainant to enjoin the defendants from proceeding to sell cer-
tain real estate, the property of the First National Bank of Helena,
for taxes claimed to be due from said bank to said county of Lewis
and Clarke for the year 1896.    It appears from the bill that com-
plainant is the receiver of said bank, appointed by the comptroller
of the currency of the United States, and has qualified and is act-
ing as such officer;  that said French is the treasurer of said Lewis
and Clarke county, and as such the collector of taxes for the same;
that said French has advertised for sale, and threatens to sell,
the real estate of said bank to pay said taxes;  that one E. D.
Edgerton, who was then the receiver of said bank duly appointed
by said comptroller, paid the taxes upon all of the real estate of
said bank, which was advertised for sale as above stated;  that
said bank was a national bank, incorporated under the banking act
of the United States, and was conducting business as such.    The
tax claimed to be due from said bank, and for which said sale was

advertised and proposed to be made, was an assessment on what is claimed to be for the shares of stock of said bank, valued at $497,906. From the affidavit of W. J. Bickett and Henry T. Davis, it appears that a blank form for a return of a list of property subject to taxation for the year 1896 in the county of Lewis and Clarke, Mont., was presented to said bank, and a list of said property demanded. It is set forth in the bill that the said bank never made out a verified list of said property, but, in the latter part of June of the said year 1896, George H. Hill, then the assistant cashier of said bank, for it handed to said Bickett, as deputy assessor for said county, the following:

| | |
|---|---:|
| Capital | $800,000 00 |
| Surplus | 100,000 00 |
| Undivided profits | 94,000 00 |
| | $994,149 01 |
| U. S. bonds | $100,000 00 |
| Real estate | |

It is set forth, also, in the bill, that the said bank did not for the year 1896, but that the said assessor did for that year, prepare the assessment list of property belonging to the said bank, and that he (the assessor) estimated for himself the value of the property. The assessor added the $100,000 in United States bonds, and the value of the real estate, estimated at $147,290, together, and then deducted the amount from the said $994,149.01; and then took as the value of the stock two-thirds of the amount left, which, according to the calculations of said assessor, left $497,906. For this amount the bank was assessed. The deputy, Bickett, in his affidavit claimed that this was the value of the shares of stock, and this stock was assessed to the bank.

The return, if any, of the bank, was of capital. The entry of "stock" by the assessor opposite to the said sum of $497,906 would appear to also indicate capital stock, and not the value of shares of stock. There is no number of shares indicated. It is stated in the affidavits that the bank has been accustomed to make such returns for assessments for several years prior to 1896. This would not make it legal. Section 3691, Pol. Code Mont., provides:

"The stockholders in every bank or banking association organized under the authority of this state or the United States, must be assessed and taxed on the value of their shares of stock therein, in the county, town, city or district where such bank or banking association is located, and not elsewhere, whether such stockholders reside in such place or not. To aid the assessor in determining the value of such shares of stock, the cashier or other accounting officer of every such bank must furnish a verified statement to the assessor, showing the amount and number of shares of the capital stock of each bank, the amount of its surplus or reserve fund, the amount of investments in real estate, which real estate must be assessed and taxed as other real estate."

Section 3692:

"In the assessment of the shares of stock mentioned in the next preceding section, each stockholder must be allowed all the deductions and exemptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this state, and the assessment and taxation must not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state."

It will be seen from this section that the law provides for the assessing of shares of stock to the owners, and to this end the cashier or other accounting officer of a bank must furnish a verified statement showing the amount and number of shares of the capital stock, and the surplus or reserve fund. It is not required that such officer should state the names of the shareholders. The statement is required to enable the assessor to fix the value of the shares of each stockholder. There is nothing in any of the affidavits to show that any such statement as is provided in said section 3691 was demanded of any officer of the bank. If the statement given of the amount of capital, the undivided profits, and surplus was intended to comply with this provision of the statute, this did not authorize the said assessor to list the shares of stock to the bank. Neither a national bank nor the stock therein can be taxed by a state law unless the United States expressly authorizes the same, and then only to the extent of such authorization. Mercantile Bank v. City of New York, 121 U. S. 138, 154, 7 Sup. Ct. 826. I am unable to see how the term "capital," as returned by Hill, the assistant cashier, can be construed to mean shares of stock. There is a clear and well-understood distinction between the terms "capital" and "shares of stock." When the assessor made his computation, he found $497,906 of stock. If this meant the value of the stock, we do not have the number of such shares, or by whom held. Unless the bank owned the shares of stock, the assessor had no right to assess the same to the bank. The law, both state and national, provides that the shares of stock shall be assessed, and to the owners thereof. The bill avers that there were various individual stockholders of the said bank, holding various numbers of shares of said capital stock in separate and distinct ownership. It cannot be assumed that the bank owned all the shares of its capital stock. There is no list of the bank showing this. I do not think the return that the bank made can be construed to be a return of the shares of the capital stock. It has been held that the capital of a bank is not subject to state taxation. If the bank gave in its capital for taxation, it is not estopped now from refusing to pay the same. It would be the same as listing property exempt from taxation, and there is no reason of justice or public policy which would preclude the bank from refusing to pay the same. Cooley, Tax'n, 263, 264; Dunnell Manuf'g Co. v. Inhabitants of Pawtucket, 7 Gray, 277; City of Charlestown v. Middlesex Co. Com'rs, 109 Mass. 270. If the assessor made out the list, and assessed the capital or shares of stock to the bank, he had no right to do either. He should have known that the bank was not liable to pay taxes on the shares of its stock in solido; that that tax was due from the holders of such shares; and, as for the capital, that was not permitted to be taxed. National Bank v. City of Richmond, 42 Fed. 877.

The next question presented is as to whether the court has any right to enjoin the collection of this tax. It is claimed on behalf of the defendant that the receiver, Brown, should pay this tax under protest, and then recover the same back from the tax

collector in an action at law. The tax in this case was made by law a lien upon the real estate of the bank, although not a tax on such real estate. The tax collector was proceeding, under the provision of the state law, to sell the real estate described, and had advertised the same for sale. Such a sale as this would have created a cloud upon the title of the bank to the real estate sought to be sold. The deed given in pursuance of such a sale would be prima facie evidence that (1) the property was lawfully assessed as required by law; (2) the property was equalized as required by law; (3) the taxes were levied in accordance with law. Pol. Code Mont. § 3897. In the case of Huntington v. Railroad Co., 2 Sawy. 503, 514, Fed. Cas. No. 6,911, Judge Sawyer held that a deed in such a case would cast a cloud upon the title to the land named therein, and said:

"In such case the court will interfere by injunction to prevent a cloud being cast upon the title. The court will enjoin the casting of a cloud upon the title in cases wherein the cloud itself, when cast, would be removed." Pom. Eq. Jur. § 1345.

In the case of Railway Co. v. Cheyenne, 113 U. S. 516, 525, 5 Sup. Ct. 601, 605, Justice Bradley, speaking for the court, said:

"Even the cloud cast upon his title by a tax under which such a sale would be made would be a grievance which would entitle him to go into a court of equity for relief."

In the following cases it is recognized that a court of equity will interfere to restrain the collection of an illegal tax when some established ground for equitable interference is presented: Shelton v. Platt, 139 U. S. 591, 11 Sup. Ct. 646; Dows v. City of Chicago, 11 Wall. 109; Hannewinkle v. Georgetown, 15 Wall. 547; Lyon v. Alley, 130 U. S. 177, 9 Sup. Ct. 480. Cooley, Tax'n, 422–444. If the preventing or removing a cloud upon a title is a recognized ground of equity jurisdiction, a law of a state which affords a legal remedy for the wrong complained of will not devest the court of equity of its jurisdiction in a proper case. In the case of Barber v. Barber, 21 How. 582, 592, the supreme court said:

"It is no objection to equity jurisdiction in the courts of the United States that there is a remedy under the local laws; for the equity jurisdiction of the federal courts is the same in all the states, and is not affected by the existence or nonexistence of an equity jurisdiction in the state tribunal."

See, also, Kirby v. Railroad Co., 120 U. S. 130, 137, 7 Sup. Ct. 430.

There is another consideration presented in this case. The complainant is a receiver, and hence occupies a fiduciary relation to the creditors of said bank. In the case of Cummings v. Bank, 101 U. S. 157, the supreme court said (in a case where a bank held a fiduciary relation to its shareholders), "It holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties appertaining to it." In City of Boston v. Beal, 51 Fed. 306, it was held that a receiver of an insolvent bank could not be required to pay the taxes on the shares of stock of the stockholders, although the law requiring the bank, if solvent, to do this, would be good.

For these reasons, I hold that an injunction pending this action should issue, upon the complainant executing a bond to save defendants harmless on account of the issuing thereof, in the sum of $5,000.