**GULLY, Tax Collector, v. FIRST NAT. BANK IN MERIDIAN.**

**No. 7767.**

Circuit Court of Appeals, Fifth Circuit.

Jan. 18, 1936.

504

J. C. Floyd, of Meridian, Miss., and Marshall W. Amis, of Jackson, Miss., for appellant.

Albert S. Bozeman and R. E. Wilbourn, both of Meridian, Miss., for appellee.

Before FOSTER, SIBLEY, and WALKER, Circuit Judges.

SIBLEY, Circuit Judge.

During 1930 the First National Bank of Meridian did business in Meridian, Miss. It suspended January 13, 1931, and was put into a receiver's hands. He transferred most of the assets to the newly organized First National Bank in Meridian on June 4, 1931. The state tax collector on August 1, 1933, sued the latter bank, which we will distinguish as the new bank, for state, county, and municipal taxes for 1930, assessed on returns made by the old bank; he asserting that the new bank had agreed to pay them in its purchase of the assets of the old bank. The suit, brought in a state court, was by the new bank removed to the federal court on two grounds: That the suit arose under the laws of the United States, and that it was one for winding up the affairs of a national bank. Remand was denied. The petition was dismissed as showing no cause of action after two amendments were refused. The state tax collector appeals, assigning as error the refusal to remand, the refusal of the amendments, and the dismissal of the suit.

Each assignment requires an understanding of the allegations of the original petition. In addition to the general facts above stated, it sets forth in great detail the laws of the state and the charter powers of the city and school district involved, but makes no special mention of any law of the United States. The petition asserts that the old bank was a national banking association organized under the laws of the United States and was subject to taxation by the state, county, city, and school district where it did business; that it made a return during 1930 in its own name for state and county taxes thus: "Bank's capital stock, surplus and undivided profits less book value of real estate $540,135. Total valuation of all personal property $540,135"; and that the proper tax officers included in the assessment roll in those words that valuation of the capital, surplus, and undivided profits of said bank, and that state and county taxes at rates fixed for the year were assessed in named amounts "against said capital stock, surplus and undivided profits of the First National Bank of Meridian." Similarly it is alleged that the old bank made a report to the city tax assessor of Meridian "of the number and amount of all the shares of its capital stock paid in and of the sum of all undivided profits, surplus and accumulation of every sort excluding its real estate" upon which there was entered upon the city assessment roll this: "First National Bank, 2600 shares capital stock, $260,000; surplus and undivided profits, $313,890; (total), $573,890; less real estate, $33,700, $540,190. Total value of all personal property $540,190; total tax on same $13,504.75." This figure included city and school taxes. The allegation is made that all these taxes were due by the bank's shareholders, but the bank was by law made liable to pay them as the shareholders' agent, and might charge them to the shareholders, and had in hand until January 13, 1931, available funds belonging to the shareholders to protect it in so doing, but had failed and neglected to make payment on December 1, 1930, when payment was due, and it became thereby directly and primarily liable for the taxes. It is alleged that on January 13, 1931, the

old bank "became insolvent, suspended business and was thereafter duly liquidated by a receiver appointed by the Comptroller of the Currency." The contract of sale of the assets by the receiver to the new bank is exhibited. In a preliminary "whereas" clause it recites that the new bank as part of the consideration "will assume and pay in full, with interest, the claims of all other creditors against said suspended bank, whether said claims be known or unknown, which may be duly established according to law, and in addition will assume and pay in full all expenses of the receivership of said suspended bank both accrued and to accrue." In the formal agreement which follows the language is that the new bank will, besides surrendering numerous claims held by it under a creditors' agreement supposed to be over 90 per cent. of all claims, "pay $297,888.78, representing the amount necessary to pay all receivership expenses accrued and to accrue, and to enable the receiver to pay in full with interest to the date of payment the claims of all known creditors who have not executed the aforesaid creditors' agreement * * *' and the said purchaser will pay the receiver such further sums from time to time during the period of active receivership as the receiver may deem necessary to meet receivership expenses and to provide for the payment of such unlisted or unknown claims as may be established during the period of active receivership." The final allegation is that the new bank thereby became liable for these taxes and the prayer is for a personal decree.

Is this a suit arising under the laws of the United States? Although the new bank is alleged to be liable because of its contract, yet the state tax collector must and does assert also a tax claim collectible from the old bank. This in turn necessarily involves a construction and application of the laws of the United States, because the old bank was a national bank. It is thoroughly settled that a national bank is an instrumentality of the federal government, and that a state and its subdivisions are wholly without any power solely by virtue of state law to levy any tax, direct or indirect, upon such banks, their property, their franchises, or the shares of their stock. The only authority to levy any such tax comes from the laws of Congress now expressed in 12 U.S.C.A. § 548. McCulloch v. Maryland, 4 Wheat. 316, 4 L.Ed. 579; Owensboro National Bank v. Owensboro, 173 U.S. 664, 19 S.Ct. 537, 43 L.Ed. 850; First National Bank of Gulfport v. Adams, 258 U.S. 362, 42 S.Ct. 323, 66 L. Ed. 661; Des Moines National Bank v. Fairweather, 263 U.S. 103, 44 S.Ct. 23, 68 L.Ed. 191; First National Bank of Guthrie Center v. Anderson, 269 U.S. 341, 46 S.Ct. 135, 70 L.Ed. 295; and see Domenech v. National City Bank, 294 U.S. 199, 55 S.Ct. 366, 79 L.Ed. 857. We recognize the rule that for a suit to arise under the Constitution or laws of the United States it must so appear in the allegations of the petition, and that the rule thus stated touching the original jurisdiction of the District Court is to be applied also to a removal for this cause under the present removal statute, 28 U.S.C.A. § 71. State of Tennessee v. Union & Planters' Bank, 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511; State of Minnesota v. Northern Securities Co., 194 U.S. 48, 24 S.Ct. 598, 48 L.Ed. 870. We recognize also the rule that it is not enough that some defense is to be asserted which arises under such Constitution or laws. Taylor v. Anderson, 234 U.S. 74, 34 S.Ct. 724, 58 L.Ed. 1218. But section 548 is not a limitation placed by the federal laws upon an antecedent right of the state to tax national banks, so as to be considered only a weapon of defense against such taxation. Both in form and in substance it is a grant of authority to state legislatures to tax such banks, limiting them, however, to one of three forms of taxation: Either of the shares, or of the dividends from them included in the shareholder's taxable income, or of the income of the bank. The last form only is a tax against the bank. As to the first two forms of taxation, the section says that where nonresidents of the state own the shares or income, taxation of them shall be where the bank is located, and "such associations shall make return of such income and pay the tax thereon as agent of such nonresident shareholders." This very plainly indicates, both as to resident and nonresident shareholders, that the tax is on the shareholder and not on the bank, which in any case may, and in case of nonresident shareholders must, act as agent of the shareholders in making return and paying the tax. The law of Mississippi, Code of 1930, § 3138, adopts the plan of taxing the shares both in state and national banks on a return to be made by the president or cashier, adding: "Each said bank and banking association shall, nevertheless, be liable to pay any taxes as

the agent of each of its shareholders, and may pay the same out of their individual profit account, or charge the same to their expense account, or to the account of such shareholder in proportion to their ownership." Without stopping to construe these provisions further than to say that they plainly pursue the permission of section 548 to tax the shares of the shareholders, we assert that as to a national bank the state statute depends for its force on this law of the United States. A pleader need in general not plead any law, but only the facts on which he relies. When a petitioner is claiming federal jurisdiction, he usually and properly points out the federal law on which he relies. But he cannot, by omitting reference to the law of the United States by virtue of which alone the facts pleaded could avail to support the relief which he seeks, escape the jurisdiction of the federal courts over his suit when invoked by a petition for removal. Irrespective of the merit of his claims, the present suit of the state tax collector, in so far as it involves the assertion of a valid state tax against the old bank or against the shares of its stock, necessarily depends upon an application of the laws of the United States and arises under them. See Spokane Falls & N. R. Co. v. Ziegler, 167 U. S. 65, 17 S.Ct. 728, 42 L.Ed. 79; Hall v. C., R. I. & P. R. Co. (C.C.) 149 F. 564. In Texas & Pacific Ry. Co. v. Cody, 166 U.S. 606, 17 S.Ct. 703, 41 L.Ed. 1132, judicial notice that the defendant railway company was a corporation organized under the laws of the United States was taken in order to sustain removal. Postal Tel. Cable Co. v. Alabama, 155 U.S. 482, 15 S. Ct. 192, 39 L.Ed. 231, has only a superficial likeness to this case. There the state was suing for taxes imposed by the independent authority of the state and not by federal authorization. That the present suit involves also a question of the liability of the new bank under its contract does not defeat jurisdiction. Jurisdiction because of a federal question persists irrespective of the decision made of that question, and even though it may be unnecessary to decide it at all, the case turning finally on questions of state law. Greene, Auditor v. Louisville & Interurban R. Co., 244 U.S. 499, 37 S.Ct. 673, 61 L.Ed. 1280, Ann.Cas. 1917E, 88.

On the other hand, this is not a "case for winding up of the affairs of a national bank" of which the District Court is given jurisdiction by 28 U.S.C.A. § 41 (16). The agreement with the receiver, presumably duly authorized, disposed finally of the assets transferred by it. If the contention of the state tax collector is sound that it gave him a direct right of action against the new bank, the assertion of that right is merely a suit against the new bank on its contract and not one to wind up the affairs of the old bank. Compare Moulton v. National Farmers' Bank (D.C.) 27 F.(2d) 403. Therefore, though the second ground for removal is not well taken, the first ground holds good. The case was properly removed, and remand was properly refused.

Turning to the merits, the petition fails to set forth a cause of action against the new bank. The assessments above set forth speak for themselves, and cannot be altered by alleging legal conclusions about them. They assessed no shareholder and no share of stock, but undertook to assess the bank on the value of its assets other than real estate. The assessment for state and county taxes does not so much as mention shares. That for city taxes refers to the number of shares, but at last the valuation and assessment is of "all personal property" of the bank. The lien for taxes established by Mississippi Code, § 3120, upon property assessed, would attach to the personal property of the bank and not the shares of the stockholders. A similar assessment of the personal property of a national bank in Mississippi, although approved by the State Supreme Court, was held illegal in First National Bank of Gulfport v. Adams, 258 U.S. 362, 363, 42 S.Ct. 323, 66 L.Ed. 661. But, it is argued, that decision was rendered on a direct and timely attack upon the assessment, and in the absence of a return by the bank, whereas here the attack is collateral and the assessment followed a voluntary return by the bank and has been acquiesced in until after the bank's failure, which should estop the bank to question it. Whether a solvent bank may thus bind itself we do not inquire. The question here, as we shall show, is whether the receiver of an insolvent bank is bound, and it must be answered in the negative. In permitting state taxation of national banks, Congress has not granted the right to tax the bank on its personal property. One purpose was probably to preserve it for the creditors in case of insolvency. After insolvency the personal property cannot be taxed in the receiver's hands. Rosenblatt v. Johnston, 104 U.S. 462, 26 L.Ed. 832. To compel the receiver to pay taxes which can lawfully be imposed

only upon the shareholders and their shares would be to take money from the creditors to pay obligations due by the shareholders, and is inadmissible. Stapylton v. Thaggard (C.C.A.) 91 F. 93; City of Boston v. Beal (C.C.) 51 F. 306, affirmed (C.C.A.) 55 F. 26; Brown v. French (C.C.) 80 F. 166; Baker v. King County, 17 Wash. 622, 50 P. 481. This view of the matter would prevent the receiver from paying these taxes out of the bank's assets, even had proper assessment been made against the shares and their owners. And it answers the further contentions of the state tax collector that the Mississippi Code, § 3138, requires the bank to pay the tax on the shares with a right to charge it to the shareholders, and that section 3122 makes "every lawful tax assessed, levied or imposed by the state, or by a county, municipality * * * a debt due by the person or corporation owning the property * * upon which the tax is imposed, whether properly assessed or not * * * and may be recovered by action." A tax on the personal property of the bank has not been and cannot be lawfully assessed or imposed; and while a tax lawfully imposed on the shares according to Section 3138 may be required to be paid by the bank as agent for the shareholders so long as the bank is a going concern and can have a real recourse on the shareholders, as is held in First National Bank v. Chehalis County, 166 U.S. 440, 17 S.Ct. 629, 41 L.Ed. 1069, Van Slyke v. Wisconsin, 154 U.S. 581, 14 S.Ct. 1168, 20 L.Ed. 240, and First National Bank v. Kentucky, 9 Wall. 353, 19 L.Ed. 701, insolvency ends the statutory agency to pay and the personal assets of the bank cannot thereafter be taken from creditors to pay the shareholders' debt.

We have assumed that the new bank can be held only for obligations that could have been enforced against the receiver of the old bank. This we think is the correct interpretation of the contract. The preliminary recital as heretofore quoted is quite broad, but the contracting clause is specific and should be held to measure more exactly the obligation assumed. That obligation is to pay a fixed sum to cover the claims referred to in the recital, and in addition to pay *to the receiver* such sum as *the receiver* may deem necessary to meet additional receivership expenses and to pay such unknown claims as "may be *duly established during the period of active receivership.*" Assuming, as is asserted, that in Mississippi a third person for whose benefit a promise is made may enforce it by a direct suit against the promisor, the promise can be enforced only according to its terms. The tax claim here asserted is not shown to be one that was or could have been duly established against the receiver during the active receivership and which he could have called upon the new bank to pay.

One amendment offered and rejected elaborated some of the ideas already discussed, making express reference to the laws of the United States as relied upon by the petitioner. It alleged also that for several years the old bank had returned its property and been assessed just as in 1930 and had paid the taxes, whereby an estoppel was claimed to deny liability for the year 1930. We find no ground for an estoppel, especially as against the receiver. Brown v. French (C.C.) 80 F. 166. The amendment also set up that the stockholders of the old bank had assigned their shares for the benefit of the new bank under an agreement with an organization committee that the assignors "be relieved and held harmless from any and all statutory liability as a shareholder of the First National Bank of Meridian, Mississippi." It is not pleaded how the new bank became bound by the contract of the committee, but if bound, we think the reference was, not to back taxes which the shareholders might owe on their stock, but to their liability to be assessed on the stock to pay the bank's debts under 12 U.S.C.A. § 64. Moreover, there is no assumption, but only an agreement to hold harmless, which would not justify a direct suit by the holder of an obligation. This amendment set up no better cause of action.

Another amendment sought to add as parties the old bank and certain individuals who under the creditors' agreement were made trustees for a large amount of frozen assets to manage and collect them, from the proceeds of which the shareholders might eventually get something; and judgment was prayed against the old bank and the interest of the shareholders in the fund thus put with the trustees. Irrespective of the merit of the claims asserted against the old bank and the trustees, the amendment was not germane to the original suit against the new bank and there was no error in rejecting it.

The judgment of the District Court is in all respects affirmed.