The **STATE of COLORADO** ex rel. the **LAND ACQUISITION COMMISSION,** a duly constituted and acting public body corporate, Petitioner,

v.

**AMERICAN MACHINE AND FOUNDRY COMPANY,** a New Jersey Corporation, Hattie N. Curtis, Eva Gilbert, W. J. Graham, as Treasurer of El Paso County and W. F. Phelps, as Assessor of El Paso County, Respondents.

Civ. A. No. 5363.

United States District Court
D. Colorado.

July 25, 1956.

tion Commission was created pursuant to a statute of Colorado, to procure and convey to the United States of America certain lands situate in the State of Colorado to be designated by an agency of the Federal Government for use as a site for the United States Air Force Academy; that Parcel No. 147 is a tract of land situate in El Paso County, Colorado, which is needed for construction of the Academy; that the Respondent Foundry Company is the record owner thereof; that the Respondent Hattie N. Curtis is the record owner of the mineral interest or estate underlying a portion of the parcel; that Respondent Eva Gilbert may have a reversionary interest therein, and, that Respondent Graham, as Treasurer of El Paso County, may have some claim against the parcel due to tax liens. The Respondent Phelps, County Assessor, was joined only for purpose of serving upon him notice of the action. Prayer is made for condemnation of the parcel and for a determination of compensation.

The petition for removal alleges that the action is one of which this Court has original jurisdiction:

1) Because the matter in controversy exceeds the sum of $3,000 exclusive of interest and costs and arises under the Constitution, laws or treaties of the United States, 28 U.S.C.A. § 1331, and 2) because it is a civil action between citizens of different states with a sufficient amount in controversy, 28 U.S.C.A. § 1332, and therefore removable under 28 U.S.C.A. § 1441.

Proceeding first to a determination of whether or not there is here involved a "federal question" within the contemplation of 28 U.S.C.A. § 1331:

It is contended by the Respondent Foundry Company that the allegation in the first paragraph of the petition in condemnation that "the Land Acquisition Commission was created and established * * * to procure and convey to the United States of America all lands and rights pertaining thereto, or other interests therein, within an area designated by the agencies of the Federal Government as a site for a United States

Duke W. Dunbar, Atty. Gen. for the State of Colorado, John P. Holloway, Asst. Atty. Gen., for petitioner.

Lewis, Grant & Davis, Byron R. White, and Robert H. Harry, Denver, Colo., Cox, Langford, Stoddard & Cutler, Washington, D. C., of counsel, for respondents.

KNOUS, Chief Judge.

The petition in condemnation herein involved initially was filed on April 19, 1956 in the State District Court of El Paso County, Colorado. Thereafter, on May 9, 1956, the Respondent, American Machine and Foundry Company, filed its petition for removal of the action against it to this Court. The matter now rests upon Petitioner's motion to remand.

The petition in condemnation sets forth, generally, that the Land Acquisi-

Air Force Academy," sufficiently states a federal question to permit this Court's cognizance of the action. The theory is that since the statute of Colorado empowered the Commission to purchase land only as designated by an agency of the federal government, the statute of the United States, of which the Court may take judicial notice, which empowers the federal agency to so designate, must be construed, and thus a "federal question" is presented.

The Session Laws of Colorado, Second Extraordinary Session 1954, chapter 2, as amended, Session Laws of Colorado 1955, chapter 54, provides, in part:

"Section 1. There is hereby created a commission, which shall be known as the Land Acquisition Commission, and hereafter called the commission. It shall be composed of three members who shall be appointed by the Governor and who shall serve without compensation and for the life of this act, or until their duties herein prescribed shall be completed or until they shall be removed by the Governor, whichever shall occur first. In the event of a vacancy on the commission, it shall be filled by appointment by the Governor.

"Section 2.—Corporate Powers— Said commission shall be a body corporate and shall have the power to adopt and use a common seal at will and shall have and exercise all powers necessarily incident to a body corporate and as provided by law. Said commission is established for the sole purpose of and is hereby empowered to treat with the federal government and its duly constituted agencies relative to the selection of a permanent location within the state for a United States Air Force Academy and to procure and convey real property selected or designated. In the event of the selection by the duly constituted agencies of the federal government of a site in the state of Colorado as a permanent location for such Air Force Academy, then the commission is hereby empowered with the approval of the governor to bind the state of Colorado to procure and convey to the federal government all lands and rights pertaining thereto within the area designated by the agencies of the federal government. Said commission is authorized and empowered to acquire lands and rights pertaining thereto, or other interests therein, by donation, purchase, exchange of state owned lands, or otherwise, and is also empowered to receive and apply gifts of money to be used in the purchase of such lands. Said commission is further empowered to acquire such real property in the name of the state of Colorado, by the exercise of eminent domain through condemnation proceedings in accordance with law, which power shall exist, and condemnation proceedings may be instituted, for the period from the effective date of this act and until the existence of the commission is terminated as provided herein. Said commission is further empowered to convey to the federal government, its agencies or instrumentalities, all such real property so acquired with or without compensatory payment or exchange. Said commission is further authorized and empowered to contract for such services as it may require and may institute in the name of the state of Colorado such other types of legal proceedings as may be necessary to fully accomplish its duties as herein prescribed.

"Section 3. Revolving Fund— There is hereby created a revolving fund which shall consist of the balance of the sum heretofore appropriated to the land acquisition commission and such other moneys as said commission may from time to time receive. Said fund is hereby appropriated and may be used by said commission in connection with its duties herein prescribed and shall remain available to said commission until July 1, 1959, or until

the duties of said commission shall be completed, whichever shall first occur, at which time the existence of said commission shall expire and any moneys unexpended shall revert to the general fund."

The federal statutes of which the Respondent Foundry Company desires the Court to take judicial notice are §§ 1851–1857 of Title 10 U.S.C.A.

Section 1851 provides for the establishment of the Academy.

Section 1852 provides in part:

"(a) The Secretary of the Air Force shall determine the location of the Academy within the United States in the following manner:

"(1) The Secretary of the Air Force shall establish immediately a commission, and appoint five members thereof, to advise him in connection with the selection of a permanent location for the Academy. The commission shall make its report to the Secretary as soon as practicable.

"(2) The Secretary shall accept the unanimous decision for a permanent location by such commission. In the event such recommendation is not unanimous, the commission by a majority vote shall submit to the Secretary three sites from which the Secretary shall select one as the permanent location.

"(b) Following the selection of a location for the Academy, the Secretary of the Air Force is authorized—

"(1) to acquire land from other Government agencies without reimbursement, with the consent of such agencies;

"(2) to acquire lands and rights pertaining thereto, or other interests therein, including the temporary use thereof, by donation, purchase, exchange of Government owned lands, or otherwise, without regard to section 551 of Title 40;

"(3) to prepare plans, specifications, and designs, to make surveys and to do all other preparatory work, by contract or otherwise, as he deems necessary or advisable in connection with the construction, equipping and organization of the Academy at such location * * *."

The body of the law abounds with general principles concerning the determination of how and when a case arises under the Constitution or laws of the United States. Many of these are set forth with clarity in the leading case of Gully v. First National Bank, 1936, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70. At the expense of brevity, excerpts from the opinion therein will be quoted at some length, for its reasoning alone sounds the death knell of any contention that this action presents such a "federal question" as to bring it within this Court's jurisdiction.

The Gully action was commenced in a state court of Mississippi by the petitioner, the state Collector of Taxes, to receive a money judgment. The respondent bank, a national banking association, had assumed the debts and liabilities of its predecessor, among which were taxes owing to the state, county, city, and school district. The assessment was imposed upon the shares or capital stock of the bank, its surplus and undivided profits, exclusive of the value of the real estate. The bank, in violation of its covenants, failed to pay the taxes of the old bank.

The case was removed to the federal court where the motion to remand was denied, the Circuit Court of Appeals, 5 Cir., 81 F.2d 502, affirming on the ground that the power to lay a tax upon the shares of national banks has its origin and measure in the provisions of a federal statute (R.S. § 5219, 12 U.S.C. § 548), and that by necessary implication a plaintiff counts upon the statute in suing for the tax.

In reversing the judgment, the United States Supreme Court, speaking

through Justice Cardozo, stated some of the tests of a "federal question." 299 U.S. at page 112, 57 S.Ct. at page 97:

"* * * To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action. * * * The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another. * * * A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto * * *, and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal. * * *"

Other statements of these principles may be found in Skelly Oil Co. v. Phillips Co., 1950, 339 U.S. 667, 672, 70 S.Ct. 876, 94 L.Ed. 1194; National Mutual Ins. Co. v. Tidewater Transfer Co., 1949, 337 U.S. 582, 597–598, 69 S.Ct. 1173, 93 L.Ed. 1556; Peyton v. Railway Express Agency, 1942, 316 U.S. 350, 353, 62 S.Ct. 1171, 86 L.Ed. 1525; Porter v. Bennison, 10 Cir., 1950, 180 F.2d 523, 525; Oldland v. Gray, 10 Cir., 1950, 179 F.2d 408, 412; Andersen v. Bingham & G. Ry. Co., 10 Cir., 1948, 169 F.2d 328, 330, 14 A.L.R.2d 987; Regents of New Mexico College of Agriculture & Mechanic Arts v. Albuquerque Broadcasting Co., 10 Cir., 1947, 158 F.2d 900, 907. See also the exhaustive annotation in 12 A.L.R.2d 5, and 13 A.L.R.2d 390, 14 A.L.R.2d 992.

Continuing at page 115 of 299 U.S., at page 99 of 57 S.Ct. with the language in the Gully case, the Court said:

"Not every question of federal law emerging in a suit is proof that a federal law is the basis of the suit. The tax here in controversy, if valid as a tax at all, was imposed under the authority of a statute of Mississippi. The federal law did not attempt to impose it or to confer upon the tax collector authority to sue for it. True, the tax, though assessed through the action of the state, must be consistent with the federal statute consenting, subject to restrictions, that such assessments may be made. * * * It must also be consistent with the Constitution of the United States. * * * If there were no federal law permitting the taxation of shares in national banks, a suit to recover such a tax would not be one arising under the Constitution of the United States, though the bank would have the aid of the Constitution when it came to its defense. * * * That there is a federal law permitting such taxation does not change the basis of the suit, which is still the statute of the state, though the federal law is evidence to prove the statute valid.

"The argument for the respondent proceeds on the assumption that, because permission at times is preliminary to action, the two are to be classed as one. But the assumption will not stand. A suit does not arise under a law renouncing a defense, though the result of the renunciation is an extension of the area of legislative power which will cause the suitor to prevail. Let us suppose an amendment of the Constitution by which the states are left at liberty to levy taxes on the income derived from federal securities, or to lay imposts and duties at their pleasure upon imports and exports. If such an amendment were adopted, a suit to recover taxes or duties imposed by the state law would not be one arising under the Constitution of the United States, though in the absence of the amendment the duty or the tax would fail. * * * Here the right to be established is one created by the state. If that is so, it is unimportant that federal consent is the source of state authority. To reach the underlying law we do not travel back so far. By unimpeachable author-

ity, a suit brought upon a state statute does not arise under an act of Congress or the Constitution of the United States because prohibited thereby. * * * With no greater reason can it be said to arise thereunder because permitted thereby."

It would be difficult indeed to find, other than that presented by the Gully case, itself, an issue more fitted to its language than is presented in the case at bar; the glove fits the hand without mensuration. As was stated by Justice Cardozo in the opinion, in countless cases if causes were carried back far enough, claims of right could be discovered to have their source in the provisions of a federal statute. The need for "common-sense accommodation of judgment to kaleidoscopic situations" cannot be satisfied by finding a "federal question" involved in the instant action.

The cases relied upon by respondent are clearly distinguishable. Grand River Dam Authority v. Going, D.C.Okl. 1939, 29 F.Supp. 316, and Bellaire, Benwood & Wheeling F. Co. v. Interstate Bridge Co., 4 Cir., 1930, 40 F.2d 323, both involved federal control of navigable waters. Blease v. Safety Transit Co., 4 Cir., 1931, 50 F.2d 852; Downey v. Geary-Wright Tobacco Co., D.C.Ky.1941, 39 F.Supp. 33, and Pocahontas Terminal Corp. v. Portland Bldg. & Const. Tr., D.C. Me.1950, 93 F.Supp. 217, all involved questions of interstate commerce. Obviously, the question here approaches neither. It is the opinion of the Court that there exists no "federal question" in this action sufficient to invoke the original jurisdiction of this Court, and hence it is not removable here on that ground.

Proceeding next to a determination of whether or not the action is cognizable by this Court on the ground of diversity of citizenship:

■ It will be noted that the action is one brought by The State of Colorado on the relation of the Land Acquisition Commission. The question thus presented immediately is: Is the State of Colorado the real party plaintiff? If it is, then the jurisdiction of this Court cannot be founded upon diversity of citizenship, for it is the general rule that a state is not a citizen, and a suit between a state and a citizen or corporation of another state is not between citizens of different states. Stone v. South Carolina, 1886, 117 U.S. 430, 6 S.Ct. 799, 29 L.Ed. 962; Missouri K. & T. R. Co. v. Missouri R. & Warehouse Com'rs, 1901, 183 U.S. 53, 22 S.Ct. 18, 46 L.Ed. 78; Ex parte Nebraska, 1908, 209 U.S. 436, 28 S.Ct. 581, 52 L.Ed. 876; Oklahoma ex rel. Williams v. Oklahoma Natural Gas Corp., 10 Cir., 1936, 83 F.2d 986; Arkansas State Game & Fish Comm. v. W. R. Wrape Stave Co., D.C. Ark.1948, 76 F.Supp. 323.

■ Certain principles have also been promulgated with regard to determining whether if in fact a state is or is not the real party. The mere presence of a state as a titular party is not conclusive, for such question is to be determined by the essential nature and effect of the proceeding as it appears from the entire record. Ex parte Nebraska, supra; State of Missouri v. Homesteaders Life Ass'n, 8 Cir.,1937, 90 F.2d 543; Ferguson v. Ross, C.C.N.Y.1889, 38 F. 161, 3 L.R.A. 322; Arkansas State Game and Fish Comm. v. W. R. Wrape St. Co., supra. And if it appears that the relator is in fact the beneficial party in interest, jurisdiction is based upon his citizenship. People of State of Cal. ex rel. McColgan v. Bruce, 9 Cir., 1942, 129 F.2d 421, 147 A.L.R. 782 citing Ex parte Nebraska, supra. It has been said that the state is a real party when the relief sought is that which inures to it alone, and in its favor the judgment or decree will effectively operate. Missouri, K. & T. R. Co. v. Missouri R. & Warehouse Com'rs, supra; Hertz v. Knudson, 8 Cir., 1925, 6 F.2d 812; Arkansas State Game and Fish Comm. v. W. R. Wrape St. Co., supra. Although the pecuniary or beneficial interest of the state has been a factor taken into consideration, State Highway Commission v. Kansas City Bridge Co., 8 Cir., 1936, 81 F.2d 689; Ferguson v. Ross, supra, it has

also been held that the mere fact that the state has some pecuniary or beneficial interest in the matter is not conclusive. Port of Seattle v. Oregon & W. R. R. Co., 1921, 255 U.S. 56, 41 S.Ct. 237, 65 L.Ed. 500; State of Missouri v. Homesteaders Life Ass'n, supra; State of Nebraska v. Northwestern Engineering Co., D.C.Neb.1946, 69 F.Supp. 347. The interest of the state must be one as an artificial person. Reagan v. Farmers' Loan & Trust Co., 1894, 154 U.S. 362, 14 S.Ct. 1047, 38 L.Ed. 1014; Missouri K. & T. R. Co. v. Missouri R. & Warehouse Com'rs, supra. Other cases have taken into consideration whether or not the subject matter of the action involves the exercise of a sovereign or governmental power or function of the state. Ex parte Oklahoma, 10 Cir., 1930, 37 F.2d 862; State Highway Commission v. Kansas City Bridge Co., supra; Fowler v. California Toll-Bridge Authority, 9 Cir., 1942, 128 F.2d 549.

In the instant action it is readily seen that the application of these principles, giving consideration to the statutes of Colorado creating the Commission, indicates that the State of Colorado is the real party plaintiff. The right of eminent domain is an attribute of sovereignty. People of Colorado ex rel. Watrous v. District Court, 10 Cir., 1953, 207 F.2d 50, 56. In exercising this attribute of sovereignty, it is clear that the Commission is acting merely as an agent of the sovereign which created it, for it has the power to condemn, or to institute other necessary legal proceedings, not in its own name, but in the name of the State of Colorado. Thus, the relief sought in this action would inure to the benefit of the State, and the decree will effectively operate in favor of the State * * * for in its name will title to the condemned property rest.

The Commission itself cannot be said to have any beneficial or pecuniary interest in the matter. The property obtained by condemnation may be conveyed to the Federal Government with or without compensation. It appears that the original appropriation of $1,000,000 was from the treasury of the State. What, if any, funds are left of this appropriation, now are part of a revolving fund. What is left of this revolving fund either on July 1, 1959, or at the expiration of the Commission, whichever first occurs, will revert to the State's general fund.

In these circumstances, the fact that the Commission was created a body corporate to have and exercise all powers necessarily incident thereto as provided by law, standing alone, does not affect the determination here made that the State of Colorado is the real party in interest in this action. It must, therefore, be the rule that there exists no diversity of citizenship, hence this Court has no original jurisdiction under 28 U.S.C.A. § 1332.

Counsel for the Petitioner further contends that even if it be assumed that the Commission is the real party in interest, and that it is a resident of the State of Colorado with diversity of citizenship existing between it and the Respondent Foundry Company, a New Jersey corporation, the action still could not be removed.

Subsection (c) of § 1441, Title 28, U.S. C.A., provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction. * * * "

Therefore, the Petitioner argues that as to the Respondent Foundry Company there is no "separate and independent claim or cause of action" with respect to the Respondent Hattie N. Curtis, who, the petition alleges, is the record owner of the mineral interest or estate underlying a portion of the parcel sought to be condemned and as to the Respondent Eva Gilbert who, it is alleged, may have some

reversionary interest in the parcel. If in fact this is true, and if either or both were citizens of Colorado so as to destroy the diversity between them and the Commission, again assuming it is a citizen of Colorado and the real party plaintiff in the action, then assuredly the action could not be removed. The difficulty is that the record does not disclose the citizenship of either of these respondents.

However, it is apparent that even if they were of diverse citizenship as to the Commission, it would still be necessary that the Respondent Eva Gilbert, join in the removal.

In Board of Directors etc. v. Whiteside, D.C.Ark.1949, 87 F.Supp. 69, it was held that in a condemnation suit wherein the owner of land sought removal, but was not joined by a co-defendant who held a mortgage or deed of trust thereon, the action had to be remanded because of the failure of the mortgage holder to join in the petition for removal. At page 71 of 87 F.Supp., the Court said:

"Thus, now a separate cause of action may be removed but not a separable controversy unless it constitutes a separate and independent claim or cause of action within the original jurisdiction of the United States District Courts. The petition for condemnation of the land owned by the defendant, Virginia B. Whiteside, states a separate cause of action as to the land owned by the other non-resident defendants, but insofar as the non-resident defendant, Connecticut General Life Insurance Company, is concerned the cause of action against it and the defendant, Virginia B. Whiteside, involves the same land and is one and the same cause of action and, therefore, it was necessary for the mortgagee, the defendant Connecticut General Life Insurance Company, to join in the petition for removal."

It was said in Hart-Bartlett-Sturtevant Grain Co. v. Aetna Ins. Co., D.C. Mo.1952, 108 F.Supp. 757, 759, that:

"* * * The rule is well established that in a joint cause of action, or even a separable cause of action, all of the parties must join in a petition for removal * * *."

The District Court of New Jersey held in Peter Holding Co. v. LeRoy Foods, 1952, 107 F.Supp. 56, 57 that,

"* * * Under the new wording [of § 1441(c), Title 28 U.S. C.A.] one of two or more defendants may remove the cause of action as to himself only if it is in fact a separate rather than a separable cause of action. * * *"

In determining the existence or nonexistence of a "separate and independent claim or cause of action" the pleading of the plaintiff controls. American Fire & Cas. Co. v. Finn, 1951, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702; Preas v. Phebus, 10 Cir., 1952, 195 F.2d 61; Ryan v. Tollefson, D.C.N.Y.1954, 118 F.Supp. 420. Thus, the Court takes the allegation of the petition that Respondent Eva Gilbert might have a reversionary interest in the parcel to mean what it says. The substantive law of the state is looked to in determining whether or not there is a "separate and independent claim or cause of action." Edwards v. E. I. DuPont de Nemours & Co., 5 Cir., 1950, 183 F.2d 165; South Carolina Elec. & Gas Co. v. Aetna Ins. Co., D.C. S.C.1953, 114 F.Supp. 79; Kopitko v. J. T. Flagg Knitting Co., D.C.N.Y.1953, 111 F.Supp. 549.

The headnote 2, supported by the text of Colorado Fuel & Iron Co. v. Four Mile Ry. Co., 1901, 29 Colo. 90, 66 P. 902 states:

"In a proceeding to condemn a right of way for a railway company against a domestic corporation as owner of the premises and against a foreign corporation as trustee for the holders of bonds secured by mortgage on the premises sought to be condemned both corporations were indispensable parties to the proceeding, and their interests were not divisible so that a separate ac-

tion could be maintained against each, and the foreign corporation was not entitled to have the cause removed into the federal court."

In support of this proposition, the Colorado Supreme Court cited, among other authority, City of Bellaire v. Baltimore & O. R. Co., 1892, 146 U.S. 117, 13 S.Ct. 16, 36 L.Ed. 910. Involved in that case was the question of removability of a condemnation suit wherein the codefendants were a fee-owner (apparently), and its lessee. The granting of removal on the motion of lessee was held to be error. At page 119 of 146 U.S., at page 17 of 13 S.Ct. the Court said:

"* * * The object of the suit was to condemn and appropriate to the public use a single lot of land, and not * * * several lots of land, each owned by a different person. The cause of action alleged, and consequently the subject-matter of the controversy, was whether the whole lot should be condemned; and that controversy was not the less a single and entire one because the two defendants owned distinct interests in the land, and might be entitled to separate awards of damages. * * *"

 This action is certainly a single and entire one as to the Petitioner, Respondent Foundry Co. and Respondent Eva Gilbert. A reversionary interest in the one parcel here sought to be condemned is no less an interest in the land than would be a mortgage or leasehold interest. Moreover, the more strict application given the phrase "separate and independent claim or cause of action" now found in 28 U.S.C.A. § 1441(c), than was given to its predecessor phrase "separable controversy," American Fire & Cas. Co. v. Finn, supra, gives added weight to the Bellaire and Colorado Fuel & Iron Co. cases, supra.

Holding then, as the Court does, that here there is not presented a "separate and independent claim or cause of action" as to the Respondent Foundry Co., it is unnecessary to determine whether the mineral interest or estate of Respondent Hattie N. Curtis falls into any different category than the reversionary interest of Respondent Eva Gilbert.

Having determined that this Court does not have original jurisdiction of this action on the ground that a "federal question" is present, or that there exists diversity of citizenship, and also finding that as to the Respondent Foundry Co. there exists no separate and independent claim or cause of action permitting it to remove only the cause against it, it is

Ordered and Adjudged that the motion of the Petitioner to remand be, and the same is hereby granted.