## No. 9884.

### THE STATE EX REL. BRADISH JOHNSON ET AL. VS. STATE TAX COLLECTOR ET AL., OF THE PARISH OF PLAQUEMINES.

It is permissible for a number of taxpayers, claiming to have a common interest in the enforcement of an ordinance of the police jury, enacted from motives of public policy, for the reduction of tax assessments, to unite in one suit, seeking like relief, from same injury and upon the same grounds.

Section 24 of Act 96, of 1882, does not create a board of equalization in the sense of Article 203 of the Constitution, but delegates to the board of revisors created by Section 24 of that act, amongst others, the power to correct assessments illegally or wrongfully made, in the *listing* or *valuation* thereof; and the power to equalize assessments of all properties of *like* character and *relative* value within their parish.

For this purpose said board is empowered to summon and examine witnesses with regard to the value and character of the properties assessed; and upon the evidence to determine the correctness of the listing and valuation thereof.

The police jury, acting as a board of reviewers, cannot, by ordinance, reduce the *percentage* of the assessment for the year, by wards, or otherwise. They can levy such a certain *percentum* on the *total assessment* as, in their view, may be necessary to defray the parochial expenses; but they cannot reduce to the standard of parochial necessities.

Such revision, correction, arbitration or equalization as the board of reviewers may make of assessments, are subject to review by the courts, and their action is final, unless "set aside or changed, as provided by law."

APPEAL from the Twenty-fourth District Court for the Parish of Plaquemines. *Livaudais, J.*

State ex rel. Johnson et al. vs. Tax Collector et al.

## Zacharie & Howard for Relators and Appellants :

1. The clause of Sec. 24, Act 96 of 1882, speaking of police juries, and providing "they shall also equalize the assessments of all properties of like character and relative value within their respective parishes in accordance with Article 203 of the Constitution," introduces the new feature of a Board of Equalization in our tax laws, which, though anticipated in our Constitution, has never been before carried into effect by the General Assembly.

2. In the absence of statutory provisions for its jurisdiction, and exercise and effect of its decisions. in our own statute we must look for its interpretation, in these respects, to the systems of other States having tax systems similar to our own, from which we have borrowed the new feature 16 L. 394 ; 30 Gratt. 477.

3. The powers of a mere board of review can only be exercised for correction of errors in individual assessments, after the return of the sworn list of the taxpayer and on due application made, and when refused, an appeal to the courts can only be had on proof of the exhaustion of those preliminary remedies ; a resort to those remedies is an indispensable condition precedent to relief in the courts to correct errors of assessments.

4. Boards of review increase or diminish individual assessments ; are obliged to hear evidence thereon; can add omitted property to the lists; and arbitrate between the individual taxpayer and the assessor ; their decisions are not final ; they deal with the taxpayer in his individual capacity.

5. Boards of equalization act from motives of public policy, deal with the taxpayers *en masse*, and are especially designed to carry out the principle of uniformity and equality in taxation, by comparison "of relative value of property in the different portions of the State." Constitution, Art. 203. The powers of review and equalization are distinct, and the rules governing their exercise are also separate and distinct, although in some States, as in our own, both functions are exercised by a single board. Burroughs on Taxation, § 101.

6. Boards of equalization, unlike boards of review, cannot add omitted valuations to the tax list; their powers are limited to equalizing ; "their action is on classes of property, not upon the property of individuals, thus securing equality of value of all property belonging to the same class." Desty on Taxation, Vol. I. p. 496 ; 50 Iowa 678 ; 42 Iowa 623 : Welty on Assessments, § 153, 154; 56 Cal. 195 ; Cooley on Taxation, 421 ; 7 Minn. 207 ; 4 Mich, 579 ; 21 Barb . 611; 43 Ill. 456 ; 49 Ill. 517; 72 Ill. 241 ; 3 Col. 608'; Desty, Vol. I, 496 ; 30 Gratt. 477. "This is the general construction given to the laws relating to equalization boards in other States." 30 Gratt. 477. It is a distinct power from correcting assessments.

7. Boards of equalization differ from boards of review further in their mode of action. They can act with or without application of any one; they need not take evidence or hear testimony ; they may act *ex proprio motu*. 127 Mass. 505 : 2 Gray 298 ; 120 Mass. 130 : 92 N. Y 604 ; Desty, Vol I, p. 496 ; 43 Conn. 309. .They may adopt their own means in reaching their conclusions. 16 Mich . 12.

8. Their action. unlike that of the board of review. need not be upon any individual assessment or assessments, and they need not make separate individual entries on each valuation. They need not foot up the valuations on the rolls. 22 Minn. 356. They can effect the equalization by adopting a committee's report : they can equalize by the adoption of a percentage of reduction or increase, and need not go through the arithmetical computation and make the actual arithmetical changes in figures necessary. 15 Mich. 154 ; Cooley on Taxation. 422 ; Burroughs on Taxation, § 238 ; Desty, p. 603 ; 29 Me. 196 ; 1 Mich. N. P. 16 : 48 N. Y. 93 ; 20 Vt. 643 ; 58 N. H. 580.

9. Unlike those of boards of review, the decisions of boards of equalization are final. Welty 158 ; Cooley on Taxation 291.

10. To enforce by mandamus the carrying into effect of an equalization made by a police jury, individual taxpayers affected thereby may join in an action; 51 Ill. 132; Burroughs on Taxation ; 54 Ill. 243 ; 58 Penn. St. 338 ; 34 Conn. 105 ; 24 Ohio St. 216 ; 9 Iowa 570 ; Dillon, Mun. Corp. §§ 731, 732, *et seq.*, all cases where joint injunctions were sustained on the ground of privity of interest, and the common relief sought in similar cases of excessive taxation.

11. When such equalizations are made it is the duty of the assessor, as the party making the rolls and signing them, to make the manual correction ; 34 Ann. 373; Desty, Vol. I. p. 610 ; 44 Cal. 616 ; Id. 613 ; and he may be mandamused thereto ; Desty. 526 ; 65 N. Y. 228; 44 Cal. 616; 30 Ann. 261.

12. A police jury acting as a board of equalization is not confined to any particular form in which to express their decision ; where the law prescribes no particular form for a municipal corporation or body in which to exercise its functions, it may do so in any of the usual forms, resolutions, ordinances, etc. Dillon, Vol. I, p. 362, § 246; 2d Edit. Abbot on Corps., p. 487; 36 Ann. 643.

13. The principle of *inclusio unis exclusio alterius* does not apply to an article of the Constitution, except one positively prohibitory, as abridging the power of a legislature. Cooley Cons. Lims. (87, 172 )

*M. J. Cunningham,* Attorney General, and *Jas. C. Moise* for Defendants and Appellees :

1. Boards of reviewers do not act by ordinance; they, as well as boards of equalization. are assessors (47 Cal. 646 ; 37 N . Y. 428); as such they must examine the lists submitted to them, form their judgment as to the value of each piece of property listed, arbitrate between the assessors and taxpayers, and enter such corrections and changes as they wish to make upon the lists, and return same to the assessor. from which he makes out his roll. Secs. 32, 24, 23, 27 ; Acts 96 of '82 and 98 of '86.

They are a body of limited powers, and must act strictly according to law. and may be compelled to do so by the State as well as by the taxpayer.

2. They are not boards of equalization, but such incidental powers of equalization as they may have must be exercised in accordance with Art. 203 of the Constitution, with reference to the relative values of property in different portions of the State. But even as a board of equalization their powers are strictly construed, and any unauthorized action is void. Desty's citations, p. 497, Nos. 10, 11, 12 and 15; 43 Ill. 456 ; 49 Ill. 517 ; 50 Ill. 424; 53 Ill. 477. They have no power to raise or lower the assessment of the entire district constituting their territorial jurisdiction in the aggregate. Cooley 291 ; 51 Iowa 107; Desty on Tax, pp. 496, 497 ; 11 Neb. 65.

3. An unauthorized rule of valuation adopted by them goes to the groundwork of the assessment, and vitiates the tax based upon it. 43 Wis. 55 ; 37 Id. 75. 48 ; 42 Id. 502 ; 5 Mich. 154 ; 57 Wis. 5.

4. They must assess property only according to its cash valuation (Art. 203), and not according to parochial needs, which will be considered by the police jury when regulating the rate of taxation to be subsequently levied.

5. Adjudications in other States will not govern here unless based upon laws similar to our own.

6. In this State the tax " list " and tax " roll" are separate and distinct things    Acts 96 of 1882 and 96 of 1886 ; Secs. 6, 8, 13, 14, 15, 16, 17, 18, 19, 20. 21, 22, 24, 32.

7. The proceedings with reference to the assessment of taxes are based upon the former. They are the records of the judicial acts of those officers entrusted by law with the solemn duty of assessing the tax.

The proceedings with reference to the enforcement of tax collections are based upon the rolls. They are the tax collectors' warrant or authority to collect. Sec. 32.

8. The assessor cannot be compelled, by mandamus, to alter the roll after it has been filed. He no longer has control over it. Desty, Sec. 112. p. 577; 18 Pick 575; 49 N. Y. 655; Secs. 19 and 32 of Revenue Acts.

9. Nor can he be compelled by mandamus to obey an ordinance of the police jury containing instructions with reference to assessments.

10. A suit with such declared object is really a suit to test the correctness of the assessment and must be brought in the manner prescribed by law. The statutory remedy is exclusive.

11. The owners of different pieces of property have no privity of interest as to entitle them to bring such action jointly.

12. A judgment in such a suit could only affect the assessment of the party plaintiff. Sec. 36, Rev, Acts.

13. A taxpayer, who makes no return of list nor complaint to the board of reviewers, that the valuation of his property is excessive, is presumed by his silence to consent to the tax imposed. If a party does not have his assessment corrected and perfected when he has power to do so, he is assumed to admit its correctness. 46 Mich. 530; S. C. 9 N. W. Rep. 838; 100 U. S. 547; 40 N. J. Laws 268; 4 Nev. 251; Want of knowledge no excuse; 57 Iowa 80; 17 Id. 389.

The opinion of the Court was delivered by

WATKINS, J. This is a mandamus proceeding, commenced in the district court by one hundred and twenty taxpayers, of the parish of Plaquemines, to compel the tax assessor to correct and amend the assessment rolls in conformity to an ordinance of the police jury; and to compel the tax collector to collect the taxes—State and parish— with the tax rolls thus amended.

The preliminary order was granted on the 6th of December, 1886.

On the 13th of July previous, the police jury convened, as a board of reviewers, and the tax assessor presented to them the assessment lists he had prepared, and those, also, of the taxpayers contesting their assessments; but no formal action was taken thereon, at that time.

After a partial reading of the assessment lists, it appears that a conference was held by the police jury with several planters of the parish, the immediate result of which was the adoption of the following ordinance, viz:

" *Resolved*, That the said assessor be directed to reduce the assessment of 1886, on the real estate of the first, second, third, fourth, sixth, seventh and eighth wards *ten* per cent from the assessment of 1885, and of the fifth and tenth wards *thirty* per cent, and the ninth ward *twenty* per cent."

I.

The respondents insist that there is a misjoinder of parties; that their petition shows that relators are the owners of separate and distinct pieces of property, and have, therefore, no privity or mutuality of interest, and not entitled to join in one suit. Relators' contention

is that the police jury acted in their capacity of a *board of equaliza-tion*, in adopting their said ordinance, and sought thereby to equalize the assessments of property, in the different wards of the parish, by directing the assessor to reduce the *percentage* of valuation, according to the ratio of the depreciation of the property in value. That they did not act in the capacity of a *board of reviewers*, to hear and de-termine contested assessments, upon the application of individual taxpayers; to arbitrate *individual* assessments between the citizen and the assessor; nor to correct illegal and wrongful listings and valua-tions of assessed properties.

That in enacting said ordinance the police jury acted *only* from motives of *public policy*, and not in the interest of individual taxpayers, hence all the tax-paying inhabitants of the parish have a common in-terest in its enforcement, and any number of them may be joined in one suit for that purpose, seeking *same* relief, against *same* injury, and upon the *same* grounds.

That, for the attainment of the object aimed at, a multiplicity of suits is wholly unnecessary.

It has been frequently held—and we think correctly—that taxpaying inhabitants, whose interests aggregate an appealable sum, may unite for the purpose of *resisting* a municipal ordinance, and upon like prin-ciples they may unite for the purpose of *enforcing* an ordinance of the police jury. 27 Ann. 319; 33 Ann. 567, 81; 101 U. S. 699; Dillon's Municip. Corporation, Sec. 731.

II.

Reliance is placed on the provisions of Section 24 of Act 96 of 1882, as supporting relator's theory.

The preceding section declares that the police juries of the several parishes are "constituted boards of *reviewers* for their respective par-ishes." Sec. 23.

The provisions of Sec. 24 are: "That the *said board of reviewers* shall meet on the first Monday in July of each and every year, * * * and the several assessors * * * shall lay before the *said board* all of the lists of property, with the estimated cash valuation extended, as listed and valued by the said assessors, * * * together with the lists and valuations made under oath as aforesaid, of those property owners who believe the assessor's valuation to be in excess of, and beyond the *act-ual cash value* of, the personal or real property thereon enumerated; and the *said board* shall proceed at once to arbitrate upon said lists of property and cash valuation; and their decision shall be final, unless *set aside in accordance with* Article 203 of the Constitution.

" The *said board of reviewers* shall *then* proceed to examine *all* the aforesaid lists of real and personal property submitted to them by said assessors; and should *they* find any property to have been illegally or wrongfully assessed in the listing or valuation thereof, it shall be *their* duty to correct the same; and *they shall also equalize the assessments of all properties of like character and relative value* within their respective parishes, in accordance with Article 203 of the Constitution."

This board is styled in the act creating it, a *board of reviewers*, and *not a board of equalization.*

It is clothed with power to arbitrate upon the *lists* of property, with the cash value thereof extended by the assessor, and those presented by the taxpayers who believe the assessor's valuation excessive—and their decision is final, "unless *set aside* in accordance with Article 203 of the Constitution."

It is also clothed with the further power to examine *all* assessments that are submitted to them by the assessors, and to correct all illegal and wrongful assessments, and to *equalize* the assessments of all properties of *like character* and *relative value.*

For either purpose, this board has the power of summoning witnesses and the right to interrogate them, in order to possess themselves of the necessary information with regard to the character and value of all the properties that have been listed, and included in the assessments that have been submitted to them.

Upon the evidence, they are specially empowered to pass, and to decide and to determine the correctness of the listing and the valuation.

The statute, in terms, declares that, in respect to the determination of this board on questions pertaining to the correction of the lists and the equalization of assessments—as set out in the *second paragraph* of the quoted section—"after having passed upon and determined the correctness of *any list*, and the valuation thereof, the *same shall be final, unless set aside or changed* in the manner prescribed by law."

From these consecutive and continuous provisions of the statute relied upon by the relators, we can easily discover the manifest intention of the Legislature to create a board or tribunal possessed of *quasi* judicial powers. Railroad Company vs. Sheriff, 38 Ann. 760.

This board—though to a limited extent possessing powers of a board of equalization—must *only* act upon *assessments;* such assessments as are submitted to them for examination by the assessor.

The equalization contemplated is that to be made of the assessments of " all properties of like character and of relative value" in the parish.

In order for this board to determine the "like character" of the prop-

erty assessed, the lists must be examined by them, and the properties thereon described be classified.

In order that the board should accurately determine the "relative value" of the properties assessed, the estimations of value made by the assessor, and those made by the taxpayers, must be taken, and the testimony of witnesses administered by them.

These facts once ascertained, the duty devolves upon the board to complete the equalization of *all* the properties that have been assesssd.

This may be done by placing upon one schedule *arable* lands that are above overflow. In another, those of an inferior grade and subject to overflow. In another, swamp lands. In another, timbered lands. In another, *urban* property—of different grades.

When the real estate has been carefully graded and classified, an approximate valuation may then be made for each. All properties assessed may be arranged in one or the other schedule, as the board shall determine, after having heard the evidence.

In this or similar manner the value of all properties assessed may be equalized, so that each may bear its *just* proportion of taxes. If some such an equalization were made no assessment would exceed "its actual cash value," which is the constitutional basis of all taxation. Const. Art. 203.

### III.

Evidently the one provided by the act under discussion is not the system of equalization contemplated by Article 203 of the Constitution.

It declares: " In order to arrive at this equality and uniformity, the General Assembly shall, at its first session, after the adoption of this Constitution, provide a system of equality and uniformity in assessments, based upon the *relative* value of property in the *different portions* of *the State.*"

The framers of that instrument obviously intended the creation of a State Board of Equalization, though it appears that no such act was passed by the Legislature, as contemplated.

The provisions of that article (203) were clearly not intended to be self-enforcing. Instead, we have the statute we are considering. But the powers conferred can only be exercised in the *precise* manner therein indicated.

The police jury, in passing and promulgating the ordinance sought to be enforced, clearly exceeded their powers, as a board of reviewers. They failed to exercise their *quasi* judicial powers, in the manner indicated, or in any *similar* manner.

The ordinance shows, upon its face, that they did not make a complete examination of the lists of property assessed, and which had been placed before them by the assessor. They did not, therefore, pretend to equalize *those assessments*. They did *not* take the proper mode of ascertaining the *relative* value, or like character of the properties assessed. They did not predicate the ordinance upon "*the actual cash value*" of the property assessed, but upon the *alleged necessities of the parish*, for the then current fiscal year.

On this feature of the case we will quote from the evidence of Mr. James Wilkinson, who is district attorney. He says : "The police jury met, and the tax assessor laid his lists on the desk before the police jury, and began reading out the list of property of the parish ; and also read out the cases in which oppositions had been filed.

" I don't remember the persons who opposed at that time.

"No action was taken, at that time, on any reduction whatever. It was the purpose of the police jury to read the entire list, and take action afterward on the oppositions.

" After reading through the list, as far as the fourth ward or fifth ward, several of the large sugar planters, including Messrs. Dymond and Warmoth, and the police jury, had a conference.   *   *   The sheriff was called, and *a statement of what the parish could be run for, during the year* 1886, *was approximated by them, and an agreement reached as to what it would be best to reduce the total assessment of the parish roll.*

" They then proceeded to pass an ordinance reducing the assessment, by *wards*. Thinking—as was stated in the police jury—my opinion was asked as to this reduction, a statement was made, by the members of the police jury, that it would take them too long to make the reduction, separately, and *therefore* they passed the ordinance, instructing the assessor to make these reductions, as stated in the minutes of the police jury."

This course of proceeding was in direct violation of the statute.

The Constitution provides that " the valuation put upon property for the purposes of *State* taxation shall be taken as the *proper valuation for the purposes of local taxation, in every subdivision of the State.*" Art. 203.

The police jury reversed the order of things, and attempted to make the necessities of the *parish* the basis for the assessment of *State* taxes.

It is the province of the General Assembly to determine the amount of revenue required, and not that of the police jury. But it is their province—while acting in their capacity of *police jury*—to make the

levy of such a *percentum* on the total *assessment,* as may subserve the necessities of the parish. They cannot reduce the assessment—the State assessment—so as to meet those necessities.

### IV.

In Shattuck & Hoffman, vs. City of New Orleans, et al., 39 Ann., not yet reported, this court said : "The right of the tax-payer to appear before the standing committee of the City Council and be heard concerning the description of property listed, and the valuation of same, *as assessed;* and the report of the standing committee on assessment of the City Council, are proceedings preparatory, and prerequisite to the tax-payers right of action to test the correctness of the assessment in the courts of justice."

The same rule must be applied to the revision and correction of assessments in the country parishes by boards of reviewers.

It matters not whether *such revision* consists in an arbitration by the board upon the lists of property furnished by the assessor, and those of the taxpayers resisting the assessment as made, or in their making correction of assessments, that are illegal and erroneous in the *listing or valuation,* or in equalizing assessments of properties of " *like* character and of *relative value.*"

All those powers are expressly conferred upon the police jury as a board of reviewers. Their action, in either case and in any event, is the proper subject of review in the courts. The concluding clause of the section of the statute conferring those powers on board of reviewers provides that " after having passed upon any list and the valuation thereof, the same *shall become final, unless set aside or changed, as provided by law.*"

We have been entertained and instructed by the elaborate and well-digested briefs of counsel for relators and respondents; but have chosen to rest our conclusions upon an examination and careful analysis of the statute on which relator's claims are predicated.

We are of the opinion that the ordinance of the police jury drawn in question here, as authority for the peremptory mandamus requested to the State tax collector and assessor, is illegal, null and void, and that the writ was properly denied by the judge *a quo.*

Judgment affirmed.