**YOUNG SPRING & WIRE CORPORATION, a corporation, Plaintiff,**

v.

**AMERICAN GUARANTEE AND LIABILITY INSURANCE COMPANY, a corporation, and W. B. Brandt & Co., Inc., a corporation, et al., Defendants.**
Civ. Nos. 13897-4, 13898-4.

United States District Court
W. D. Missouri, W. D.
July 24, 1963.

See also 32 F.R.D. 345.

Watson, Ess, Marshall & Enggas, by James C. Logan, Kansas City, Mo., Alfred D. Edgerton, Beverly Hills, Cal., for plaintiff.

Smith, Schwegler & Swartzman, by George M. Winger, Kansas City, Mo., for W. B. Brandt & Co., Inc.

Stinson, Mag, Thomson, McEvers & Fizzell, by John C. Noonan, Kansas City, Mo., Fiedler & Amberg, Chicago, Ill., for American Guarantee & Liability Ins. Co. and Underwriters at Lloyds, London.

BECKER, District Judge.

This action was originally filed in the Circuit Court of Jackson County, Missouri. Separate petitions for removal were filed by the defendants American Guarantee & Liability Insurance Company (hereinafter referred to as American), and by W. B. Brandt & Company, Inc. (hereinafter referred to as Brandt). Each petition for removal stated that a separate and independent claim against the movant was joined with other claims and removal of the entire case was requested under Section 1441(c) of Title 28 U.S.C.A. The plaintiff has moved to remand the cause on the ground that there is no diversity of citizenship between the plaintiff and all the defendants and that the claims are not separate and independent as provided in Section 1441 (c) of Title 28 U.S.C.A.

There has been extensive discovery by way of interrogatories and the deposition of the president of the plaintiff corporation, principally addressed to the discovery and preservation of evidence bearing upon the location of the principal place of business of the plaintiff corporation. The question of jurisdiction is now ripe for decision upon the plaintiff's motion to remand and the submission of the answers to interrogatories and the deposition of the president of the plaintiff corporation.

The removability of a case on the ground of diversity of citizenship and the question of whether separate and independent claims exist should be determined on the basis of the pleadings at the time of removal. Pullman Co. v. Jenkins, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334; Gray v. New Mexico Military Institute, (C.A.10) 249 F.2d 28. The case was pending in the state court at the time of removal upon plaintiff's "First Amended Petition" in which it was stated that plaintiff was incorporated under the laws of Michigan and had its principal place of business in Illinois. (However, on the motion to remand defendants have offered substantial proof that the plaintiff's principal place of business is in California.) The amended petition states, and it is conceded, that the defendant American is incorporated under the laws of New York and has its principal place of business in Illinois. The amended petition states, and it is conceded, that Brandt is incorporated under the laws of California and has its principal office in California. The Underwriters at Lloyd's London named in the amended petition are conceded not to be citizens of the United States.

In Count I of the amended petition the plaintiff seeks to recover from the defendant American upon a comprehensive dishonesty, disappearance and destruction policy, insuring the plaintiff against loss through fraudulent or dishonest acts committed by its employees, in a sum not to exceed $100,000. In Count II of the amended petition, plaintiff seeks to recover from Brandt and Underwriters at Lloyd's London a sum of $200,000 in excess of the primary coverage of $100,000 referred to in Count I. In this count it is charged that Brandt executed on behalf of the Underwriters at Lloyd's a certificate of excess fidelity and depositors forgery insurance with maximum limits of $200,000 in excess of the first $100,000

of loss covered by American's contract. In this count it is stated that Brandt executed the contract on behalf of Lloyd's and caused it to be delivered to the plaintiff warranting to the plaintiff that Lloyd's would indemnify plaintiff against loss sustained by reason of the dishonesty of any or all of its employees in excess of $100,000 and up to the limit of the contract. It is further stated in this count that Lloyd's are contending that, under the terms of their contract with Brandt, no indemnity need be paid the plaintiff because (1) plaintiff's dishonest employees failed to realize pecuniary gain from their acts of dishonesty, and (2) that the primary insurer American has refused to recognize its liability as primary carrier. In this count it is further charged that if there are express exemptions from liability upon which Lloyd's could justify its refusal to pay the plaintiff, and that if Lloyd's did so limit their liability in their undertaking with Brandt, then Brandt has misrepresented the nature of the Lloyd's contract, has warranted the nature of the Lloyd's contract, and is liable for breach of representation in warranty in respect thereto. This claim against Brandt is an alternative claim under Rule 8(e) (2) of the Federal Rules of Civil Procedure.

In Count III of the amended petition plaintiff seeks recovery against Lloyd's, or in the alternative against Brandt, for the amount of $200,000 in excess of $300,000 for all loss the plaintiff sustained as a result of the alleged dishonesty of any or all of its employees. In Count III as in Count II, it is charged that Lloyd's are claiming that under the terms of their undertaking with Brandt no indemnity need be paid upon this second excess certificate for the same reasons. As in Count II, it is averred that if the position of Lloyd's is correct, Brandt has incorrectly warranted and misrepresented the true nature of Lloyd's contract of insurance to plaintiff, and is liable for breach of its representations and warranty in the sum of $200,-000 if Lloyd's is not liable.

In each of the counts it is averred as a predicate of liability that the contract sued upon was in full force and effect. It was further alleged as follows:

"3. This defendant issued to plaintiff, who paid the premium charged therefor, a Comprehensive Dishonesty, Disappearance and Destruction Policy, No. 1308117, a copy of which is attached hereto, marked Exhibit 'A' and incorporated herein by reference. At all times hereinafter mentioned said policy was in full force and effect and insured plaintiff in the amount of $100,000 for loss sustained 'through any fraudulent or dishonest act or acts' committed by any of plaintiff's employees, acting alone or in collusion with others, including losses arising from acts of plaintiff's employees occurring in the states of Kansas and Missouri.

"4. During the years 1959 and 1960, plaintiff's Equipment Division employees wrongfully shipped, or caused to be shipped, numerous items of equipment aggregating approximately One Million ($1,000,-000) Dollars invoice price to purported buyers, contrary to plaintiff's policy and method of doing business, and caused the books and records of plaintiff falsely to reflect bona fide sales when, in fact, no such sales had been made. This was done by causing documents to be issued falsely reflecting consignments as actual sales. Such employees created fictitious accounts receivable, concealed secret irregular terms of certain transactions with customers, and distorted and falsified inventory and other accounting records of plaintiff. Plaintiff's employees wrongfully ordered, or caused to be ordered, parts and materials in order to replace inventory which they had falsely reported as having been sold. All such acts were intentionally committed by plaintiff's employees, principally in the states of

Kansas and Missouri, in violation of plaintiff's policies, in breach of their fiduciary and other obligations owing plaintiff as their employer, were concealed from plaintiff by such employees, and were 'fraudulent or dishonest' within the terms and coverage of said policy.

"5. By reason of said 'fraudulent or dishonest' acts of plaintiff's employees, plaintiff was required to retake possession of such unsold equipment, repair, rehabilitate and dispose of it in order to minimize its loss. The foregoing 'fraudulent or dishonest' acts of plaintiff's employees purporting to reflect bona fide sales to plaintiff's customers resulted in apparent inventory requirements and consequent buildup of said inventory which otherwise would not have been the case, and plaintiff was thereby caused to become committed to purchase considerable items of material and parts for the manufacture of additional inventory and in fact did increase its said inventory to a point far in excess of the actual needs, which increased inventory has had to be warehoused at additional expense to plaintiff. Plaintiff was unable to dispose of such excessive inventory in an orderly fashion, much of which became obsolete and deteriorated. Some of the commitments and orders which plaintiff was caused to make for the purchase of parts and other materials were thereafter canceled, resulting in claims and charges made against plaintiff.

"6. Plaintiff sustained damages in excess of $500,000.00 resulting

from said 'fraudulent or dishonest' acts of its employees. Damages sustained and ascertained to date in retaking of equipment and disposition thereof include freight expense of $19,719.44, reword and repairs to place equipment in salable condition $78,816.22, loss attributable to worthless parts on repossessed machines $8,879.84, and salesmen's commissions and other selling expenses $84,904.88. Damages sustained by plaintiff to date resulting from decline in value of excessive inventory is $270,258.56. Damage sustained by plaintiff to date from loss due to cancellation charges on purchases of materials and parts to which it was committed in connection with the buildup of excessive inventory is $102,987.18. Damages sustained by plaintiff resulting from the cost of carrying excessive inventory to January 1, 1962, include payment of interest on borrowed funds of $125,000 rental of warehouse space $14,500, labor $14,500, warehouse utilities $725, personal property taxes $18,000, insurance $9,000, total $181,723. Such losses are continuing and will increase the total damages to plaintiff."

## DIVERSITY OF CITIZENSHIP— COUNT I

If Count I is considered as a separate and independent claim for relief under Section 1441(c) of Title 28 U.S.C.A., there is absolute diversity of citizenship. The plaintiff Young Spring & Wire Corporation was incorporated in Michigan. The Court finds that the plaintiff's principal place of business is California.[1]

---

1. The following considerations, among others, require a finding that plaintiff's principal place of business is California:
   (1) All capital expenditures in excess of $5,000 must be approved by the Beverly Hills, California, office of the corporation;
   (2) All divisions file daily sales reports and weekly production reports with the Beverly Hills, California, office;

   (3) Plaintiff files its income tax statements and registration statements for stock income in California;
   (4) Plaintiff mails its notices of stockholders' meetings and proxy solicitations from California;
   (5) Insurance coverage common to all companies is placed in California;
   (6) Plaintiff's financial and consolidated statements are maintained in California;

The defendant American was incorporated in New York and had its principal place of business in Illinois. Therefore, if Count I is a separate and independent claim or cause of action, it would be removable if sued upon alone. Section 1441(c), Title 28 U.S.C.A. Therefore, the decisive question is whether Count I is a separate and independent claim or cause of action.

## DIVERSITY OF CITIZENSHIP— COUNTS II AND III

■ If Counts II and III are separate and independent claims neither of them would be removable because diversity of citizenship does not exist. The plaintiff has its principal place of business in California, and is considered a citizen of that state for the purpose of removal. Section 1332(c) of Title 28 U.S.C.A. The defendant Brandt is incorporated in and has its principal place of business in California. Therefore, Counts II and III would not be removable if each were sued upon alone.

## FAILURE OF LLOYD'S TO JOIN IN THE PETITION FOR REMOVAL OF COUNTS II AND III

■ Lloyd's was served by serving a summons upon the Superintendent of the Insurance Division of the State of Missouri (who had been designated as agent for service). Defendant American claims that this designation was limited and that the service was not valid. (However, Lloyd's did not challenge the service and later entered a general entry of appearance expressly relating back for all purposes to the earliest date of service of process in the action.) The petition for removal of Brandt did not charge that the co-defendant in Counts II and III, Lloyd's, had not been served with process. In the proceedings on the motion to remand Brandt challenges the validity of the service on Lloyd's in order to avoid the rule that all defendants must join in the petition for removal. Section 1446(a) of Title 28 U.S.C.A.; Wright v. Missouri Pacific R. R. Co., (C.A.8) 98 F.2d 34; Barnes v. Parker, (W.D.Mo.) 126 F.Supp. 649. In the ordinary case where this rule is applied the liability asserted against the defendants is joint. Here the liability asserted against the defendants is in the alternative, but it is inter-related and involves the same alleged wrong and damage. The claims in Counts II and III against Brandt and Lloyd's in the alternative are not separate and independent claims or causes of action which would warrant removal by Brandt alone of the claim against it. Therefore, Lloyd's failure to join in the petition for removal would require that Counts II and III be remanded even if diversity of citizenship existed. 1A, Moore, Federal Practice Par. 0.168 (3.– 2), pp. 1171–76. The entry of appearance and the subsequent failure to petition for removal on the part of Lloyd's would require that the cause be remanded even though the original service was not good. 1A, Moore, Federal Practice Par. 0.168(3.–2), p. 1174 including Notes 11 and 14; Hutchins v. Priddy, (W.D. Mo.) 103 F.Supp. 601. Moreover, it is concluded that Brandt has no standing to challenge the actual service upon Lloyd's.

## THE QUESTION OF SEPARATE AND INDEPENDENT CLAIMS

If Counts I, II and III do not constitute separate and independent claims or causes of action within the meaning of Section 1441(c), it is apparent that this case should be remanded for two reasons: (1) there is no diversity of citizenship between the plaintiff and the defendants, and (2) one of the defendants, Lloyd's, has not joined in the petition for removal. Therefore, if it is concluded that Counts I, II and III are not separate and independent claims, or

(7) Eight of plaintiff's twelve officers, including plaintiff's president, have California mailing addresses;

(8) Three of plaintiff's eleven plants are located in California;

(9) Plaintiff refers to its Beverly Hills, California, office as the "home office";

(10) Plaintiff's original petition alleged plaintiff had its principal place of business in California.

at least that Count I is not a claim separate and independent from Counts II and III, then the cause must be remanded.

## POLICY OF STRICT CONSTRUCTION AGAINST FEDERAL JURISDICTION

In approaching the determination of question of jurisdiction of a District Court to entertain an action removed from the state court on the ground of diversity of citizenship, several general considerations should be kept in mind. Statutes providing for removal on the grounds of diversity of citizenship are given strict construction in favor of the jurisdiction of the state court. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214. This is particularly true in respect to Section 1441(c) which was intended to restrict, not enlarge, the diversity jurisdiction of the Federal Courts. Greenshields v. Warren Petroleum Corp., (C.A. 10) 248 F.2d 61. This policy of strict construction of removal statutes is attributed to several practical and theoretical reasons. A very practical consideration in favor of strict construction is the rule that, if removal is permitted in a doubtful case and the defendant who removed suffers an adverse judgment he may attack the removability of the case on appeal and secure a reversal on the grounds of lack of jurisdiction of the District Court. American Fire & Casualty Co. v. Finn, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702. 1A Moore, Federal Practice Par. 0.157(1.–3) pp. 75–79. Or a Court of Appeals of its own motion may raise the question of jurisdiction and reverse the judgment because removal was

not justified. Colorado Life Co. v. Steele, (C.A.8) 95 F.2d 535. Another practical consideration is the disappearance of hostility toward non-resident defendants in the several states as we become more civilized. F. & L. Drug Corp. v. American Central Ins. Co., (D.Conn.) 200 F. Supp. 718, l. c. 723. Another practical consideration is the policy of Congress to relieve the congestion in the Federal Court by restricting diversity jurisdiction. This is apparent from the amendments raising the jurisdictional amount from $3,000 to $10,000 in diversity cases. Title 28 U.S.C.A. § 1332(a) as amended in 1958. It is also apparent in the enactment of the section under consideration in 1958. Title 28 U.S.C.A. § 1441(c). It is apparent in the amendment of Title 28 U.S.C.A. § 1332 in 1958 to add subsection (c). Another principle upon which strict construction of the diversity statutes has been said to rest is one of waning force but still operative. This is the concept that the rightful independence and sovereignty of state governments require that the Federal Courts scrupulously confine their own jurisdiction within the precise limits which the statute has defined. Shamrock Oil & Gas Corp. v. Sheets, 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214. Stated in another form, the concept is this: The removal of cases on the ground of diversity of citizenship for trial in a state court is in derogation of state sovereignty. Since removal pre-supposes that the state involved is incompetent or unwilling to provide an impartial forum. Chicago, Rock Island & Pacific Ry. v. Martin, 178 U.S. 245, l. c. 248, 20 S.Ct. 854, l. c. 855, 44 L.Ed. 1055.[2]

2. In connection with this discussion the plaintiff and the defendants have asked leave to amend the first amended petition and the petitions for removal to strengthen their claims on the jurisdictional question, invoking the provisions of Title 28 U.S.C.A. § 1653. In view of the disposition made on the principal issue it is unnecessary to rule upon the right of amendment. It is interesting to note, however, that there is a sharp conflict on

the question of whether a removing defendant may be granted leave to amend a defective removal petition to state facts which were omitted and about which there is no dispute. This strict rule against amendments found in some cases is out of line with liberal concepts of procedure calculated to ascertain the truth and to eliminate technicalities. It is not, however, out of line with the strict construction in favor of state court ju-

## CLAIMS ARE NOT SEPARATE AND INDEPENDENT

An examination of the First Amended Petition leads to the conclusion that the claims are not separate and independent claims and causes of action within the meaning of Section 1441(c).

The averments of the First Amended Petition filed in the state court prior to removal show that the plaintiff is complaining of a single wrong, namely a loss in excess of $500,000, "arising from an interlocked series of transactions" in which plaintiff's employees allegedly carried out an elaborate fraudulent scheme to falsify the records of the plaintiff and wrongfully to divert property belonging to the plaintiff in breach of fiduciary obligations. The single wrong for which relief is sought is to pay compensation for this loss. Both American and Lloyd's are alleged to have insured the same subject matter, namely, the honesty of the employees in question. They insured separate parts of the same risk. American insured the first $100,000 of loss attributable to this risk; Lloyd's insured the next $400,000 of the loss attributable to this same risk. It is true that the basis of liability asserted against Brandt is different from the basis of liability asserted against American and Lloyd's, but that is of no consequence. Gray v. New Mexico Military Institute, (C.A.10) 249 F.2d 28, l. c. 31–32, where it is stated:

"Applying this rule (the rule of American Fire & Cas. Co. v. Finn, supra, 341 U.S. 6, 71 S.Ct. 534, 95 L. Ed. 702 (1951), as to a single wrong arising from an interlocked series of transactions) we look to the plaintiff's complaint which controls. He seeks relief for a single wrong, the alleged negligence of the Institute and its employees. A single recovery is sought. A pleading which alleges but one wrong, for which single relief is sought, cannot constitute a separate and independent claim, no matter how many defendants are said to be liable therefor, or how diverse their basis of liability."

See also Durham v. Irish Shipping, Ltd., (E.D.Pa.) 204 F.Supp. 68; Henry Kraft Mercantile Co. v. Hartford Accident & Indemnity Co., (W.D.Mo.) 107 F.Supp. 505.

This case is controlled by the decision of the Supreme Court of the United States and American Fire & Casualty Company v. Finn, supra, 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702. In the Finn case, an action was brought in a state court by a citizen of Texas, seeking damages for a fire loss on property which the plaintiff claimed was insured. Under plaintiff's pleadings, one or more of the three defendants were responsible for the loss. The case was removed by the non-resident insurance companies. The plaintiff obtained judgment against one of them and the other defendants were found to be entitled to a judgment in their favor. The Supreme Court reversed the case, holding that the claims of the plaintiff against the non-resident defendants were not separate and independent claims. The defendant who had removed the case was permitted to attack the judgment on the ground that the case was not removable. In this case the

risdiction and of statutes providing for removal on the grounds of diversity of citizenship. The following cases illustrate the conflict on this issue:

Leave to amend granted: Firemen's Insurance Co. of Newark, N. J. v. Robbins Coal Co., (C.A.5) 288 F.2d 349, cert. denied, 368 U.S. 875, 82 S.Ct. 122, 7 L.Ed. 2d 77; Goforth v. Allstate Ins. Co., (W. D.N.C.) 213 F.Supp. 595; Park v. Hopkins, (S.D.Ind.) 179 F.Supp. 671.

Leave to amend denied: Carlton Properties, Inc. v. Crescent City Leasing Corp., (E.D.Pa.) 212 F.Supp. 370; Young v. Railway Express Agency, (W.D. Ky.) 209 F.Supp. 953; Eubanks v. Krispy Kreme Donut Co., (E.D.Tenn.) 208 F.Supp. 479; Evans-Hailey Co. v. Crane Co., (M.D.Tenn.) 207 F.Supp. 193; F. & L. Drug Corp. v. American Central Ins. Co., (D.Conn.) 200 F.Supp. 718; Browne v. Hartford Fire Ins. Co.. (N.D.Ill.) 168 F.Supp. 796.

defendants claim that the Finn case involved only one loss while the plaintiff's pleading in this case discloses a whole series of separate and distinct losses based upon the shipment of numerous items of equipment during 1959 and 1960. Within the meaning of the Finn case there is one total loss arising from an interlocked series of transactions, a conspiracy among the employees of the plaintiff to carry out a scheme of fraudulent and dishonest action involving breach of fiduciary duties and falsification of records to conceal the breach. The chance that a consecutive number of first acts of dishonesty would total exactly $100,000 is so improbable that it should be ignored in determining this question. The chance that the next consecutive acts, considered separately, would create a loss of exactly $200,000 is more improbable and should be ignored. This conclusion is supported by the following additional cases: Charles Dowd Box Co. v. Fireman's Fund Ins. Co., (C.A.1) 303 F.2d 57; Lancer Industries, Inc. v. American Ins. Co., (W.D.La.) 197 F.Supp. 894.

The following cases relied upon by the defendants are either not in point or not consistent with the ruling of the Supreme Court in the Finn case: Pacific Railroad Removal Cases, 115 U.S. 1, 5 S.Ct. 1113, 29 L.Ed. 319; Hammer v. British Type Investors, Inc., (S.D.N.Y.) 15 F.Supp. 497; Lucania Societa Italiana Di Navigazione v. United States Shipping Board Emergency Fleet Corp., (S. D.N.Y.) 15 F.2d 568; Greenshields v. Warren Petroleum Corp., (C.A.10) 248 F.2d 61; Breslerman v. American Liberty Ins. Co., (E.D.N.Y.) 169 F.Supp. 531; Baltimore Gas & Elec. Co. v. United States Fid. & Guar. Co., (D.Md.) 159 F.Supp. 738.

The cause should be remanded.

For the reasons stated it is hereby

Ordered that these consolidated causes be, and they are hereby, remanded to the Circuit Court of Jackson County, Missouri.