**292**

PENN SECURITIES COMPANY et al.

v.

HOME INDEMNITY COMPANY and Insurance Company of North America.

No. 75–1226 Civil.

United States District Court,
M. D. Pennsylvania.

March 31, 1976.

Peter G. Loftus, Scranton, Pa., for plaintiffs.

Daniel Mungall, Jr., Stradley, Ronon, Stevens & Young, Philadelphia, Pa., Arthur Silverblatt, Wilkes-Barre, Pa., Paul E. Barrett, Nogi, O'Malley & Harris, Scranton, Pa., for defendants.

MEMORANDUM AND ORDER

NEALON, District Judge.

Plaintiffs, all subsidiaries of Pennsylvania Life Company (Penn Life) engaged in the business of selling securities to the public,[1] seek in this action a declaratory judgment affirming the existence of insurance coverage under two fidelity bonds issued by defendant Insurance Company of North America (INA) and one such bond issued by defendant Home Indemnity Company (Home). INA is a Pennsylvania corporation with its principal place of business in Philadelphia. Home is a New Hampshire corporation with its principal place of business in New York. Plaintiffs seek this determination because of the possibility of their being held liable in several lawsuits which have been filed against them and which seek aggregate damages of more than $500,000 arising out of a series of fraudulent acts committed by one Thaddeus L. Plevyak during his association with Penn Securities and Penn Equities as a sales representative. The suit was originally filed in the Court of Common Pleas of Lackawanna County, Pennsylvania, but was removed to this Court by defendant Home on October 7, 1975, pursuant to 28 U.S.C. § 1441(c). At issue here is plaintiffs' motion to remand on the ground that Section 1441(c) does not

---

1. Pennsylvania Securities Company (Penn Securities), a wholly owned subsidiary of Penn Life, is a California corporation with its principal place of business in that state. Glenwood Securities, Inc. (Glenwood), also a wholly owned subsidiary of Penn Life, is a New Jersey corporation with its principal place of business in that state. Pennsylvania Equities, Inc. (Penn Equities) is also a New Jersey corporation with its principal place of business in that state. Although it too is a subsidiary of Penn Life, the record does not disclose what percentage of it is owned by the parent.

permit removal of this case. Inasmuch as all parties agree that Section 1441(c) is the only possible basis for removal of the lawsuit,[2] the determinative question here is whether that statute authorizes removal of this suit.

The relevant facts, none of which are in dispute, are as follows.[3] Plevyak initially became associated with Penn Equities in 1960 as a part-time sales representative in its Scranton, Pennsylvania office. After becoming a full-time representative in 1970, he became a registered sales representative for Penn Securities in January 1973, when all Penn Equities' sales representatives were terminated, and became sales representatives for Penn Securities. During the period 1968 through August 1973, Plevyak engaged in a series of fraudulent acts and transactions that included taking money from customers on the pretext of acquiring securities on their behalf, and then not purchasing the securities but retaining the money for his own benefit. Following the filing of criminal charges against him in August 1973, he entered a plea of guilty to some of the charges and is presently serving a sentence in a Pennsylvania state prison. As result of Plevyak's actions, several civil suits have been commenced against the plaintiffs in this action seeking to hold them liable for damages caused by Plevyak. It was to determine their insurance coverage for that potential liability that plaintiffs commenced the instant declaratory judgment action.

Insurance against liability of the kind sought to be imposed upon plaintiffs as a result of Plevyak's dishonesty was arranged for by plaintiffs in the form of the three fidelity bonds issued by the defendants in this suit. The bond issued by Home was a blanket bond (the Home blanket bond) issued on May 14, 1970 in the amount of $50,000 subject to a deductible amount of $1,000. Among the losses covered by this bond was "any loss through any dishonest or fraudulent act of any of the employees committed anywhere and whether committed alone or in collusion with others, including loss of property through any such act of any of the Employees." *See* Exhibit A to Plaintiffs' Petition for Summary Judgment. Under the terms of the Home blanket bond, all three plaintiffs are insured during the period May 14, 1970 to the present, and, in addition, any losses sustained prior to the effective date of the Home blanket bond are covered under the clause contained in that bond entitled "Indemnity Against Losses Under Prior Bond or Policy." Plaintiffs' Petition for Summary Judgment, Para. 16 and 17.

The first bond issued by INA is also a blanket bond (the INA blanket bond). This bond was issued on March 1, 1971, and initially only covered Glenwood. On July 5, 1972, its coverage was extended to include Penn Equities. It has never insured Penn Securities. The INA blanket bond contains a clause covering losses sustained through employees' dishonest or fraudulent acts that is identical to the corresponding clause in the Home blanket bond. Its total coverage is $500,000, subject to a $1,000 deductible, and includes losses "sustained by the Insured at any time but discovered . . . prior to the termination or cancellation of this bond as an entirety . . . " Exhibit B to the Petition.

2. Federal jurisdiction of the instant suit is based on diversity, and it is clear that, as a general rule, diversity cases are removable "only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b). Because defendant INA is a Pennsylvania corporation, this case would not be removable under the general rule. 28 U.S.C. § 1441(c) provides a limited exception to the general rule "[w]henever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action . . ." It provides that under those circumstances "the entire case may be removed[,]" or the court may retain jurisdiction of the separate and independent claim and "remand all matters not otherwise within its original jurisdiction." Section 1441(c) is quoted in its entirety, *infra*.

3. The removability of a case pursuant to Section 1441(c) should be determined on the basis of the pleadings at the time of removal. *Pullman Co. v. Jenkins,* 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). Accordingly, the recitation of facts here is taken from the pleadings.

The second INA bond is a Comprehensive Dishonesty, Disappearance and Destruction Policy that provides coverage in excess of the amount insured by the Home blanket bond (the INA excess bond). It was issued to Penn Life on May 14, 1972 to insure Penn Securities and Penn Equities for losses sustained during the period May 14, 1972 to the present. The amount of coverage provided by the INA excess bond was initially $200,000, and was increased to $4,950,-000 on April 27, 1973. The INA excess bond covers the same kind of employee dishonesty losses that are covered by the other two bonds in this case.

Turning to the applicable law, 28 U.S.C. § 1441(c) provides:

"Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

Inasmuch as Home removed this case pursuant to Section 1441(c), on the basis of plaintiffs' claim against it under the Home blanket bond, the determinative issue on this motion to remand is whether plaintiffs' claim against Home under the Home blanket bond is "a separate and independent claim or cause of action" within the meaning of Section 1441(c).

The leading case on that issue is *American Fire & Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1950), the Supreme Court's only consideration of Section 1441(c) to date. In that case, Finn, a Texan, sued two foreign insurance companies and their local agent, also a Texan, in a Texas state court. The complaint contained alternative claims for recovery for a fire loss suffered by plaintiff, alleging that one or the other insurer had issued policies or that the local agent was liable for having failed to keep plaintiff's property insured. The foreign insurance companies removed the entire case to federal court pursuant to

Section 1441(c). In the course of holding that the case had been improperly removed because the claim against the insurance companies was not "separate and independent" from the claim against the agent, the Supreme Court established, *inter alia,* that a primary Congressional purpose in enacting Section 1441(c) was "to limit removal from state courts[,]" *id.* at 10, 71 S.Ct. at 538, and that, accordingly, Section 1441(c) should be construed narrowly to effectuate the Congressional purpose of restricting removal. The Court concluded that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *Id.* at 14, 71 S.Ct. at 540. With respect to the suit at issue in that case, the Court held that the complaint sought relief for a single wrong—the failure to pay compensation for the fire loss—and that, accordingly, the claim against the insurance companies was not separate and independent under Section 1441(c).

Since *Finn,* lower court cases construing Section 1441(c) have been almost unanimous in their adherence to the Supreme Court's mandate that the statute is to be given a narrow construction to effectuate the Congressional intent that removal be limited. As stated in *Douglass v. Park City Associates,* 331 F.Supp. 823, 824 (E.D.Pa. 1971), "[c]ases are legion for the proposition that title 28 U.S.C.A. 1441(c) should be given a strict construction and that doubt should be resolved in favor of non-removal." *See* 14 Wright & Miller, Federal Practice and Procedure, *Civil,* § 3724, particularly the cases cited at note 40 of § 3724, pp. 633–635, all of which deal with insurance policies.

In line with the policy of narrow construction of Section 1441(c), the courts have developed strict definitions of the terms "separate and independent" as contained in the statute, typical of which are the definitions stated by the Court of Appeals for the Tenth Circuit in *Snow v. Powell,* 189 F.2d 172, 174 (10th Cir. 1951):

"The critical words 'separate' and 'independent' are used in the conjunctive and should be given their full significance in order to carry out the intent and purpose of Congress to limit removals and to simplify the determination of removability.

"The word 'separate' means distinct; apart from; not united or associated. The word 'independent' means not resting on something else for support; self-sustaining; not contingent or conditioned."

*Accord, Her Majesty Industries, Inc. v. Liberty Mutual Insurance Co.,* 379 F.Supp. 658, 661 (D.S.C.1974); *Anderson v. Union Pacific Coal Company,* 332 F.Supp. 605, 607 (D.Wyo.1971); *Douglass v. Park City Associates, supra,* at 826–827; *Hyde v. Carder,* 310 F.Supp. 1340, 1342 (W.D.Ky.1970); and *Hoagland v. Rost,* 126 F.Supp. 232, 234 (W.D.Mo.1954).

Applying the above authority to the instant case, it seems clear that plaintiffs' claim against Home is not separate and independent within the meaning of Section 1441(c). Plaintiffs seek recovery for a single wrong—the failure to pay compensation for the loss caused by Plevyak's fraud. Both Home and INA are alleged to have insured the same subject matter, namely, the honesty of Plevyak. They insured separate parts of the same risk. Moreover, Plevyak's scheme, allegedly a series of dishonest acts and transactions whereby he defrauded several of plaintiffs' customers, falls precisely within the language of the Supreme Court in *Finn, supra,* that "where there is a single wrong to plaintiff, for which relief is sought, arising from an interlocked series of transactions, there is no separate and independent claim or cause of action under § 1441(c)." *American Fire & Casualty Co. v. Finn, supra,* 341 U.S. at 14, 71 S.Ct. at 540. Finally, the Home blanket bond and the INA excess bond are expressly tied to each other by the language of the INA excess bond which provides that the liability of INA under that bond is conditioned on and contingent upon the inadequacy of coverage under the Home blanket bond. *See* the Excess Endorsement to the INA excess bond, attached as Exhibit A to Memorandum of Law in Support of Plaintiffs' Motion to Remand. Thus, those two bonds are by their own terms not "separate and independent" as that phrase has been defined by the courts construing Section 1441(c).

Home seeks to avoid the conclusion that seems inexorably compelled by the authorities by arguing that the claim against it is separate and independent from the claim against INA because the INA bond only insures for losses in excess of those covered by the Home bond, and that, therefore, "defendant INA can be liable only for a different series of losses and not for the same losses as defendant Home." Memorandum of Law in Opposition to Plaintiffs' Motion to Remand, at 6. This argument is not only contrary to the strong policy restricting removal under Section 1441(c), as articulated in *Finn* and other cases, it has also been rejected by the only two cases that have considered it, both of them on facts indistinguishable from the instant case. *See Her Majesty Industries, Inc. v. Liberty Mutual Insurance Co.,* 379 F.Supp. 658 (D.S.C.1974); *Young Spring & Wire Corp. v. American Guarantee and Liability Insurance Co.,* 220 F.Supp. 222 (W.D.Mo. 1963). The argument similarly will not be accepted here.

In accordance with the foregoing, plaintiffs' motion to remand will be granted.